## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **PIERRE PHENIX,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:22-cv-00825-HEA** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Pierre Phenix's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, [Docs. 1, 6], and a Motion to Amend 28 U.S.C. § 2255 Motion, [Doc. 24]. The Government filed a response in opposition, [Doc. 22]. For the reasons stated below, both motions will be denied and this matter will be dismissed with prejudice.

### BACKGROUND

On April 7, 2021, Phenix was indicted by the Grand Jury for the Eastern District of Missouri on a charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *United States v. Phenix*, 4:21-cr-00239-HEA (E.D. Mo.), [Doc. 1]. The maximum penalty for that charge is imprisonment of not more than 10 years and a fine of not more than $250,000. 18 U.S.C. § 924(a)(2).

### *Plea Agreement*

On June 1, 2021, Phenix executed a written guilty plea agreement with the

Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  [Doc.

37].[1]  Phenix acknowledged "having voluntarily entered into both the plea

agreement and guilty plea" and that "[he], is in fact, guilty."  [*Id.* at 10].  Phenix

stipulated and agreed to the following facts:[2]

> On March 31, 2021, Defendant was arrested in St. Louis County, within the
> Eastern District of Missouri, while possessing a firearm.  On that day, police
> were surveilling Defendant to arrest him on active warrants, and to take
> custody of three minor children who were supposed to be in the custody of
> the Children's Division.  Police surveilled Phenix, waiting for him to exit his
> vehicle so that police could arrest him without endangering the children.
>
> As Phenix arrived at a car wash and exited the vehicle, police stopped him
> and arrested him. He was carrying a handgun in his left armpit. Security
> camera footage from the car wash showed that when he exited the vehicle,
> the handgun was in his right pant pocket, with its extended magazine
> protruding from his pocket. Once he exited the vehicle, the security footage
> shows him remove the handgun from his pocket and place it in his armpit,
> between his left arm and torso. When police arrested him, they seized the
> firearm. A search of Phenix's car led to the discovery of 4.5 grams of crack
> cocaine and a spare 50-round drum magazine for the handgun.
>
> The handgun was identified as a Glock make, model 19, 9mm Luger caliber
> semiautomatic handgun. It was loaded with one round in the chamber and a
> fully-loaded 17-round magazine. The handgun was determined by an expert
> firearms examiner to have been manufactured outside the State of Missouri,
> and, therefore, the handgun had been transported across state lines and in

---

[1] All citations to the record refer to the underlying criminal case, *United States v. Phenix*,
4:21-cr-00239-HEA (E.D. Mo.) unless otherwise stated.

[2] Phenix also agreed that the facts were true and correct under oath during the plea
hearing.  [Doc. 68 at 15-18].

interstate commerce prior to or during Defendant's possession. The handgun can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.  Defendant admits possessing the firearm, as charged in Count One.

Prior to March 31, 2021, Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year. At the time Defendant possessed the aforementioned firearm, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

The suspected controlled substances were submitted to and analyzed by an expert criminalist with the St. Louis City Crime Laboratory. The suspected controlled substances were confirmed to be crack cocaine, a Schedule II controlled substance. Defendant knew the substances were controlled substances.

[*Id.* at 3-4].  Additionally, the parties agreed that the stipulated facts "may be considered as relevant conduct pursuant to Section 1B1.3."  [*Id.* at 2].

As part of the plea agreement, the Government agreed "that no further federal prosecution will be brought in this District relative to Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment."  [*Id.* at 1].  Further, the parties agreed "that because the Government will not charge Defendant with possession with intent to distribute crack cocaine on March 31, 2021, neither party shall request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court."  [*Id.* at 2].

The statutory penalties were set forth in the plea agreement as follows:

Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

In certain situations under Title 18, United States Code, Section 924(e) (Armed Career Criminal), Defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen (15) years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. Defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to Defendant's sentence.

[*Id.* at 4].

The parties agreed that the applicable base offense level and total offense level depended on the nature of Defendant's criminal history, the characteristics of the firearm, and other relevant factors. [*Id.* at 5-6]. The parties also agreed that the following specific offense characteristics applied: "A four-level increase pursuant to 2K2.1(b)(6)(B) because Defendant possessed a firearm in connection with another felony offense, including possession with intent to distribute crack cocaine, possession of crack cocaine, and endangering the welfare of a child." [*Id.* at 5]. Further, under the agreement, Phenix would receive a three-level reduction for acceptance of responsibility pursuant to Section 3E1.1 (a) and (b). [*Id.*]. The determination of Phenix's criminal history category was left to the Court. [*Id.* at

4

6].  Further, the parties agreed that "the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement."  [*Id.* at 7].

Phenix waived his right to file pretrial motions including motions to suppress or exclude evidence and the right to a jury trial.  [*Id.* at 9].  He also acknowledged that he "has been fully apprised by defense counsel of [his] rights concerning appeal" and waived his right to appeal and post-conviction rights with certain limited exceptions.  [*Id.* at 7].  He agreed that he was "fully satisfied with the representation received from defense counsel," that he had "reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel," and that "[d]efense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and any defenses."  [*Id.* at 10].

### *Change of Plea Hearing*

Phenix appeared with his counsel on July 29, 2021, and entered a plea of guilty to the charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) in accordance with the plea agreement.  [Docs.  37, 68].  He was sworn

under oath and questioned by the Court.  [*Id.*]  When questioned about defense

counsel, he testified as follows:

> Q. (By the Court) … Mr. Phenix, have you had the opportunity to meet with
> your lawyer and talk with him about your case?
> A. Yes.
>
> Q. And are you satisfied that you have had sufficient time and opportunity to
> meet with him and talk about your case?
> A. Yes.
>
> Q. And has your lawyer advised you regarding your case?
> A. Yes.
>
> Q. And are you satisfied with all of the advice that he has given to you?
> A. Yes, sir.
>
> Q. Has he answered all of your questions fully, completely, and to your
> satisfaction?
> A. Yes, sir.
>
> Q. Is there anything that you needed to know or wanted to know about your
> case that still confuses you?
> A. No, sir.
>
> Q. Is there anything about your case that you still do not understand?
> A. No, sir.
>
> Q. Were there any witnesses that you wanted your lawyer to contact that he
> should have contacted but did not contact?
> A. No, sir.
>
> Q. Was there any investigation that you wanted your lawyer to do for you, or
> that he should have done for you, that he didn't do?
> A. No, sir.

Q. Was there any information that you wanted him to get from the Government regarding your case that he should have gotten from the Government regarding your case that he didn't get?
A. No, sir.

Q. Was there anything at all that you wanted your lawyer to do for you in this case that he has failed to do or refused to do for you?
A. No, sir.

Q. Are you fully satisfied with all of the work that Mr. Byrne has done for you?
A. Yes, sir.

Q. Do you have any complaints against him in regard as your attorney?
A. No, sir.

[Doc. 68 at 7-8].

When questioned by the Court regarding sentencing and his knowledge of

the range of punishment, Phenix testified:

Q. Do you understand that whatever sentence I impose is entirely up to me?
A. Yes, sir.

Q. Do you understand, Mr. Phenix, that that's true, even though you may have some agreement between yourself and the United States on things relating to sentencing?
A. Yes, sir.

[*Id.* at 10-11].

Q. Were you also aware of the range of punishment that applies to the charges in the indictment? A. Yes, sir.

Q. And you have talked about that with your lawyer as well?
A. Yes, sir.

Q. Any questions about the range of punishment?
A. No, sir.

THE COURT: All right. Mr. Dunkel, what is the applicable range of punishment in this matter? MR. DUNKEL: As for a term of imprisonment, is a term of incarceration of up to 10 years. As for the fine, it is a fine of up to $250,000, and of course, it could be both imprisonment and a fine. It is also including a term of supervised release of no more than three years.

Q. (By the Court) Mr. Phenix, did you hear everything that Mr. Dunkel just said?
A. Yes, sir.

Q. And is there anything regarding the range of punishment that he stated just now that surprised you in any way just now?
A. No, sir.

Q. Has anyone forced you to plead guilty today?
A. No, sir.

Q. Has anyone threatened you to cause you to plead guilty?
A. No, sir.

Q. Has anybody made any promises to you in exchange for your plea of guilty?
A. No, sir.

[*Id.* at 11-12].

Q. So again, do you understand whatever the sentence is, it is entirely up to me?
A. Yes, sir.

Q. And knowing that, do you still want to go forward with your plea of guilty here today? A. Yes, sir.

[*Id.* at 15].

When questioned about the plea agreement, Phenix testified:

Q. …When we started out this proceeding, Mr. Phenix, I made a reference to the guilty plea agreement. Your last page of the guilty plea agreement, page

8

11, shows the name of Pierre Phenix in print, and there is a signature above the printed name; is that your signature?
A. Yes, sir.

Q. And before you signed the document, did you talk about it with your attorney Mr. Byrne?
A. Yes, sir.

Q. And as a result of that discussion and review, are you now satisfied that you understand everything in the guilty plea agreement?
A. Yes, sir.

Q. Are there any questions that that you have regarding the guilty plea agreement?
A. No, sir.

[*Id.* at 13].

MR. DUNKEL: As part of the guilty plea agreement, the Defendant is agreeing to plead guilty to Count 1 of the indictment. That's the count of being a Felon in Possession of a Firearm. In exchange for that plea of guilty to Count 1, the Government is promising to file no additional charges against the Defendant. And that would also include charges relating to the crack cocaine that he was in possession of on the day of his arrest. The parties also agree that the parties will request a sentence that's within the guidelines of the United States Sentencing Guideline manual. And finally, your Honor, I would note, that as part of the guilty plea agreement, the Defendant is waiving certain Appellate Rights.

Q. (By the Court) All right, thank you. Did you hear all of those things that he just stated, Mr. Phenix?
A. Yes, sir.

Q. Is there anything he said regarding the guilty plea agreement just now that surprised you in any way just now?
A. No, sir.

Q. All right. The Court will then approve of the guilty plea agreement as outlined on the record. Mr. Phenix, has anybody given you a promise or given you a prediction regarding what your sentence from me is going to be?
A. No, sir.

Q. So again, do you understand whatever the sentence is, it is entirely up to me?
A. Yes, sir.

Q. And knowing that, do you still want to go forward with your plea of guilty here today?
A. Yes, sir.

[*Id.* at 14-15].

### *Presentence Investigation Report*

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). [Doc. 46]. Phenix's base offense level was 26. [*Id.* at 6]. Four levels were added for possessing a firearm in connection with another felony offense. [*Id.*]. And, he received a three-level reduction for acceptance of responsibility. [*Id.*]. His total offense level was 27. [*Id.*].

Phenix's total criminal history score was 19, which established a criminal history category of VI. [*Id.* at 9]. His criminal history included felony convictions for Resisting Arrest (3), Possession of a Controlled Substance (2), Domestic Assault 2nd Degree (2), Aggravated Stalking, Endangering the Welfare of a Child, and Tampering with a Motor Vehicle. [*Id.* at 7-26]. He also had numerous misdemeanor convictions including Domestic Assault 3rd Degree (3)

and Possession of a Controlled Substance. [*Id.*]. In total, his criminal history included 36 cases with several cases involving more than one charge. [*Id.*].

Based on a total offense level of 27 and a criminal history category of VI, Phenix's guideline imprisonment range was 130 to 162 months. [*Id.* at 33]. Because the statutory maximum term of imprisonment was 10 years, the guideline term of imprisonment became 120 months. [*Id.*].

### *Sentencing Hearing*

During the sentencing hearing on January 5, 2022, the Court adopted as its findings of fact the factual statements in the PSR. [Doc. 60 at 3]. The Court also adopted, as its additional findings, the Sentencing Guidelines calculations in the PSR of a Total Offense Level of 27, a Criminal History Category of VI, and sentencing guideline range of 120 months. [*Id.* at 4]. The parties asked the Court to follow the plea agreement in which the parties agreed to a guideline sentence, which under the circumstances was 120 months. [*Id.* at 4-5]. The Court followed the plea agreement and sentenced Phenix to 120 months imprisonment. [*Id.*].

### *28 U.S.C. § 2255 Motion*

On August 5, 2022, Phenix filed the instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging ineffective assistance of counsel. [Petitioner's § 2255 Motion, Docs. 1, 6]. He focuses on two alleged inconsistencies in the plea agreement in three of the four grounds stated in his

§ 2255 motion.  For Ground 1, he claims that defense counsel was ineffective for failing to object to the alleged inconsistencies in the plea agreement.  [Doc. 6 at 4, 19-26].  For Ground 2, he claims that defense counsel was ineffective for failing to investigate the case and go over the case with him.  [*Id.* at 5, 27-32].  For Ground 3, he claims that defense counsel was ineffective for causing him to sign a guilty plea agreement with the alleged deficiencies.  [*Id.* at 7, 32-35].  For Ground 4, he claims that defense counsel was ineffective for failing to file pretrial motions including a motion to dismiss the Indictment and a motion to suppress the evidence.  [*Id.* at 8, 36-38].  Under Grounds 1-3, Phenix commingles his primary claim of ineffective assistance of counsel with allegations of breach of the plea agreement, prosecutorial misconduct, sentencing issues, and failure to appeal.  [*Id.* at 19-35].

## LEGAL STANDARDS

### *28 U.S.C. § 2255*

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  To obtain relief under § 2255, the petitioner must establish a

12

violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion, files, and records of the case conclusively show that the movant is not entitled to relief." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citing 28 U.S.C. § 2255(b)). The motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995).

### *Ineffective Assistance of Counsel Claims*

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, the petitioner must show that (1) his counsel did not perform to the degree of skill of a reasonably

competent attorney, and as a result, (2) he was prejudiced.  *Id.* at 687.  Failure to satisfy either of the *Strickland* prongs [performance or prejudice] is fatal to the claim.  *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("If the petitioner makes an insufficient showing on one component, the court need not address both components.").

"*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017).  An attorney's performance is not constitutionally deficient "unless it is outside the 'wide range of reasonable professional assistance.'" *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689).  "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Id.* (quoting *Buck*, 580 U.S. at 118-119 (cleaned up)). The Court makes "every effort to eliminate the distorting effects of hindsight and consider performance from counsel's perspective at the time." *Id.* (cleaned up).  The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).  A petitioner "bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

A court need not determine whether a movant meets the performance prong of *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Strickland*, 466 U.S. at 697. "[T]he prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (cleaned up). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the [m]ovant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59). "[T]he defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (cleaned up). Where the petitioner states on the record that he is satisfied with his lawyer, that no threats or promises had been made to induce him to plead guilty, and admits his guilt, he has a heavy burden to overcome those admissions and show that his plea was involuntary. *Nguyen*, 114 F.3d at 703.

# DISCUSSION

## *28 U.S.C. § 2255 Motion*

Phenix focuses on two alleged inconsistencies in the plea agreement as the basis for Grounds 1-3: (1) that the plea agreement was "contradictive" with regard to prosecution for other crimes; and (2) the Government's promise of a three-level reduction based on his acceptance of responsibility was illusory.  His larger point is that he did not receive a benefit from the plea agreement because he received the maximum sentence.

## Ground 1:  Defense counsel was ineffective for failing to object to two alleged inconsistencies in the plea agreement.

In addition to arguing that defense counsel was ineffective for failing to object to the alleged inconsistencies in the plea agreement, Phenix claims the alleged inconsistencies constitute a breach of the plea agreement and prosecutorial misconduct.  He alleges defense counsel should have objected to and appealed the prosecutorial misconduct.

### A.  *"Contradictive" plea agreement*

Phenix asserts the plea agreement was "contradictive" based on his belief that sections 2 and 6 conflict with each other.  In section 2, the Government agreed not to prosecute him for any other violations of federal law arising out of the events that gave rise to the Indictment.  [Doc. 37 at 1].  In section 6, the parties agreed that Phenix would receive a four-level enhancement for possessing a

16

firearm in connection with three other felony offenses – possession with intent to distribute crack cocaine, possession of crack cocaine, and endangering the welfare of a child.  [*Id.* at 5].  He contends defense counsel was ineffective for failing to notice and object to the alleged inconsistency.  Further, he argues the alleged inconsistency is a breach of the plea agreement and prosecutorial misconduct.

There is no inconsistency in the Government agreeing not to prosecute for certain offenses and Phenix receiving a *sentencing enhancement* based on the circumstances of the events surrounding the Indictment.  The Government's pursuit of a sentencing enhancement does not breach a promise not to file additional criminal charges.  *United States v. Peck*, 496 F.3d 885, 889 (8th Cir. 2007).  In *Peck*, the appellant argued that pursuing sentencing enhancements "effectively" constitutes filing additional charges.  *Id.*  The Eighth Circuit rejected the argument because "there is no way to file criminal charges 'effectively.' They are either filed or they are not." *Id.*  Here, as in *Peck*, the Government did not file additional charges but instead, pursued only a sentencing enhancement.  This was not a breach of the plea agreement nor prosecutorial misconduct.

Further, while under oath during the plea hearing, Phenix acknowledged that he had reviewed the plea agreement, discussed the plea agreement with his counsel, and that he understood everything in the plea agreement.  [Doc. 68 at 13].  He also acknowledged "having voluntarily entered into both the plea agreement

17

and guilty plea." [*Id.* at 10].  The sentencing enhancement is clearly stated and agreed to in the plea agreement.  [Doc. 37 at 5].  Thus, the plea agreement and his testimony during the plea hearing contradict the allegations he now makes.

Based on the record, Phenix has not demonstrated deficient performance by defense counsel, or that he suffered any prejudice related to counsel's performance with regard to the sentencing enhancement in the plea agreement.

### B. *Acceptance of responsibility reduction*

Phenix argues the Government breached the plea agreement and committed prosecutorial misconduct because, despite an agreement that he would receive a three-level reduction based on his acceptance of responsibility, he received the maximum sentence of ten years.  He claims that he did not receive the promised reduction for acceptance of responsibility.  [Doc. 6 at 28].  To the contrary, the PSR shows that Phenix received a three-level reduction for acceptance of responsibility.  [Doc. 46 at 6].

More to the point, Phenix claims the promised reduction was illusory because he received the maximum sentence.  There is no promise or guarantee in the plea agreement as to what effect, if any, the reduction will have on the guideline range or his sentence.  [Doc. 37 at 5].  If Phenix had a criminal history category of I-IV, with the three-level reduction and a total offense level of 27, the minimum of the guideline range would have been less than 120 months.  *See*

Federal Sentencing Guidelines Sentencing Table, Ch. 5, Pt. A, 18 U.S.C.A., FSG Ch. 5, Pt. A.  However, Phenix's total criminal history score was 19, which established a criminal history category of VI.  [*Id*. at 9].  Phenix was well aware of his own lengthy criminal history and acknowledged in the plea agreement that the sentencing range would be determined by the Court based on the total offense level and the criminal history category.  [Doc. 37 at 4].

Accordingly, there is no breach of the plea agreement, no prosecutorial misconduct, and his claim that defense counsel was ineffective for failing to make sure he received the reduction is without merit.

### C. Failure to File an Appeal

Phenix asserts defense counsel was ineffective for failure to object to and *appeal* prosecutorial misconduct based on a "contradictive" plea agreement, breach of the plea agreement, and the fact that he did not receive a three-level reduction for acceptance of responsibility.  This allegation implicates counsel's obligation to file a notice of appeal.

The United States Supreme Court addressed an attorney's obligation to file a notice of appeal in *Roe v. Flores–Ortega,* 528 U.S. 470 (2000).  Under *Flores–Ortega,* courts conduct a two-step analysis to determine whether an attorney's failure to file a notice of appeal was ineffective.  *Id.* at 477–78.  Under the first step, a court must determine whether a criminal defendant **specifically instructed**

19

his attorney to appeal. *Id*. at 477. Here, Phenix does not claim that he specifically requested defense counsel to file an appeal, he suggests only generally that counsel ***should*** have appealed. On this basis, he fails to establish ineffective assistance of counsel for failure to file an appeal under the first step. *See e.g. United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012) (recognizing that failure to file an appeal constitutes ineffective assistance of counsel for the purposes of § 2255 where the client specifically instructed counsel to file an appeal).

The second step applies when a defendant does not specifically instruct his attorney to appeal. "Where a defendant has not specifically requested an appeal, the reasonableness of counsel's conduct is judged by whether counsel had a duty to consult the client about the possibility of an appeal." *Watson v. United States*, 493 F.3d 960, 964 n.1 (8th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)). "This duty is triggered where there is reason to believe that a rational defendant would want to appeal or where the client has reasonably demonstrated an interest in appealing." *Id*. In making this determination, a court may consider whether a conviction followed a trial or a guilty plea, whether a defendant received the sentence he bargained for as part of a plea deal, and whether a defendant expressly reserved or waived some or all of his appellate rights. *Flores–Ortega*, 528 U.S. at 480.

Phenix's sentencing followed a guilty plea, which the record demonstrates was voluntary.  He was sentenced in accordance with the plea agreement.  When questioned by the Court during the plea and sentencing hearings, he did not raise any issues or concerns.  Defense counsel filed a Notice of Compliance with Local Rule 12.07(A) notifying the Court that "[d]efense counsel has explained to defendant his/her right to appeal and defendant has not requested that counsel file a Notice of Appeal." [Doc. 55].  There is nothing in the record to suggest that a rational defendant would want to appeal or that Phenix reasonably demonstrated an interest in appealing.  Based on the record, defense counsel's conduct was reasonable.

### D. Conclusion

Based on the record, for Ground 1, Phenix has not demonstrated deficient performance by defense counsel, or that he suffered any prejudice related to counsel's performance.  Nor do his allegations meet the heavy burden to overcome his admissions during the plea hearing that he was satisfied with the way counsel handled his case and that counsel had done everything he had asked him to do.

**Ground 2:  Defense counsel was ineffective for failing to investigate the case and go over the case with Phenix.**

Phenix claims defense counsel was ineffective for failing to notice the inconsistencies in the plea agreement, failing to properly calculate the proper sentencing guideline range, and failing to object at sentencing to an alleged

21

miscalculation of the guideline range.  First, as discussed under Ground 1, *supra*, the plea agreement was not inconsistent.

Next, Phenix's claims regarding the improper sentencing guideline calculation suggest that defense counsel failed to inform him of the likely consequences of pleading guilty.  Even if true, "[i]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *Walker v. United States*, 810 F.3d 568, 578 (8th Cir. 2016) (citation omitted).  "[A] defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence." *United States v. Granados*, 168 F.3d 343, 345 (8th Cir.1999); see also *Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982) ("a defendant cannot set aside a guilty plea merely because he relied on his attorney's opinion that the sentence would be a lenient one").  "Where a defendant is invariably informed that the sentencing decision rests solely in the discretion of the trial court, and where the defendant states at the sentencing hearing that he understood the negotiated plea and that there were no promises other than the plea agreement, the plea will not be set aside as involuntary." *Hollis*, 687 F.2d at 260 (cleaned up).

22

Here, the statutory penalties were set forth in the plea agreement.  [Doc. 37 at 4].  And, the Court advised Phenix of the maximum possible sentence and that his sentence would be entirely up to the Court during the plea hearing.  [Doc. 65 at 10-12, 15].  Under questioning from the Court at the plea hearing, Phenix stated that he understood the range of punishment and that the sentence to be imposed was within the Court's discretion.  [*Id.*].  As a result, "[h]e cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted.  He specifically disclaimed that risk at his change of plea hearing."  *Bethel v. U.S.*, 458 F.3d 711, 718 (7th Cir. 2006).

Nor was Phenix prejudiced in any respect by his counsel's advice to plead guilty.  He alleges the guilty plea was skewed in favor of the government and did not have any benefit for him.  This, however, is far from true.  The Government's agreement not to prosecute Phenix for other changes was a substantial benefit.  Without the plea agreement, he could have received a longer sentence.

Prior to the plea agreement, the Government advised the Court and Phenix that the Government's investigation into the events on March 31, 2021, was continuing and more charges could be forthcoming.  [Docs. 22 at 2, 24 at 1-2, 26 at 2].  One of the charges that the Government agreed not to file in exchange for the plea agreement – possession with intent to distribute crack cocaine – has a 20-year maximum sentence.  *See* [Government's Response to § 2255 motion, Doc. 22 at

13].  Additionally, the Government could have charged Phenix with possessing a firearm in furtherance of a drug trafficking crime which carries a 5-year mandatory minimum sentence that must be served consecutively to any other sentence imposed.  [*Id.* citing 18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(D)(ii)].  If the Government had filed those charges, and Phenix had proceeded to trial and been convicted, the guideline range would have been 168 months to 210 months, and the additional consecutive the 60-month mandatory minimum for the § 924(c) offense.  [*Id.* citing U.S.S.G. § 5G1.2(a)].

Although Phenix argues the sentencing guideline calculation was incorrect, there is no legal basis for his claim.  Without any basis in fact or law, he claims that the firearm charge should have carried a base offense level of "maybe 24" and with a three-level reduction, his total offense level should have been 21.  *See* [Petitioner's § 2255 motion, Doc. 6 at 28].  His wishful thinking does not support a claim that the guideline calculation was incorrect.

Additionally, to the extent that Phenix suggests the sentence he received is inconsistent with the plea agreement, he is incorrect.  The parties agreed:

> [T]hat because the Government will not charge Defendant with possession with intent to distribute crack cocaine on March 31, 2021, neither party shall request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

[Doc. 37 at 2].  Based on a total offense level of 27 and a criminal history category of VI, Phenix's sentencing guideline range was 130 to 162 months.  [Doc. 46 at 33].  The statutory maximum term of imprisonment was 10 years of imprisonment under 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).  [*Id.*].  "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."  U.S.S.G. § 5G1.1(a).  As a result, the guideline sentence was 120 months.  The sentence Phenix received was consistent with the plea agreement.

Phenix's claim that counsel was ineffective by failing to investigate the case is a reiteration of the claims that defense counsel failed to notice inconsistencies in the written plea agreement and failed to properly advise him that the guideline range would be the statutory maximum.  [Doc. 6 at 30-31.  Those issues are addressed *supra*.  To the extent Phenix is referencing some other alleged failure to investigate with regard to the case, his allegations are insufficient.

To demonstrate prejudice in the context of a failure to investigate, the movant must show specifically what would have been revealed by further investigation and how the additional evidence would have made a different outcome a reasonable probability.  *Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (holding that the movant could not show prejudice because he had failed to

demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome at trial).

Here, Phenix fails to articulate any exculpatory or mitigating evidence that could have been discovered, let alone how that evidence would have affected the guilt or sentencing phase. He does not identify any witnesses that defense counsel should have interviewed, or any evidence counsel failed to gather. Instead, he offers nothing more than the conclusory statement that counsel failed to investigate the case.

Based on the record, for Ground 2, Phenix has not demonstrated deficient performance by defense counsel, or that he suffered any prejudice related to counsel's performance. Nor do his allegations meet the heavy burden to overcome his admissions during the plea hearing that he was satisfied with the way counsel handled his case, that counsel had investigated to his satisfaction, and that counsel had done everything he had asked him to do.

**Ground 3: Defense counsel was ineffective for causing Petitioner to sign a guilty plea agreement with the alleged deficiencies.**

The predominant issue raised by Phenix is that he received no benefit from the guilty plea because he received the maximum sentence. For this reason, he claims defense counsel was ineffective. Phenix has not shown his counsel made any errors to support his claim of ineffective assistance of counsel because he received the maximum sentence. As discussed under Ground 2, *supra*, the

26

Government's agreement not to prosecute Phenix for other charges was a substantial benefit.

Further, to meet the second prong of the *Strickland* test, Phenix would have to show there was a reasonable probability that, but for his counsel's errors, he would have received a sentence less than 120 months.  *See Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014) (quoting *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (stating that prejudice in the context of sentencing is proven "by demonstrate[ing] a reasonable probability that his sentence would have been different but for the deficient performance."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019) (cleaned up).  A "mere possibility of prejudice" does not meet the actual prejudice threshold needed to establish an ineffective assistance of counsel claim.  *See Prewitt v, United States*, 83 F.3d 812, 819 (7th Cir. 1996) (defendant's counsel's failure to raise a § 5G1.3(c) motion created only a possibility of prejudice and did not qualify as actual prejudice to support an ineffective assistance of counsel claim).  Here, Phenix offers nothing but speculation that if he had gone to trial, he "may have been found not guilty." [Doc. 6 at 35].

Based on the record, for Ground 3, Phenix has not demonstrated deficient performance by defense counsel, or that he was prejudiced by counsel's performance.  In addition,  his allegations do not meet the heavy burden to overcome his admissions during the plea hearing that he was satisfied with the way counsel handled his case.

**Ground 4:  Defense counsel was ineffective for failing to file pretrial motions including a motion to dismiss the Indictment and a motion to suppress the evidence.**

Phenix claims defense counsel was ineffective for failing to file (1) a motion to dismiss the Indictment and (2) a motion to suppress evidence.  Failure to file a pretrial motion does not alone establish ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Where a claim of ineffective assistance of counsel hinges on the failure of counsel to file a pretrial motion, a petitioner cannot prove prejudice if there is no reasonable probability that the motion would have been successful.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  It is well established that defense counsel cannot be ineffective for failing to raise issues upon which a defendant would not have prevailed. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance.")

### A. Failure to file motion to dismiss

Under Federal Rule of Criminal Procedure 12(b)(3)(B), a defendant may file a pretrial motion based on a defect in the indictment, including failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(B)(v).  On a motion to dismiss for failure to state an offense, the Court must accept the allegations in the indictment as true and determine whether the allegations form the basis of the charged offense.  *United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021).  "An indictment is generally sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."  *United States v. Welker*, 75 F.4th 820, 822 (8th Cir. 2023) (cleaned up).  "Whether an indictment sufficiently states an offense, then, depends on the elements of the charged offense."  *Id.*

"There is no authority under Rule 12, however, to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions."  *United States v. Brown*, 481 F.2d 1035, 1041 (8th Cir.1973) (citations omitted).  If an indictment contains facially sufficient allegations, federal criminal procedure does not provide for pre-trial determination of sufficiency of the evidence.  *United States v. Ferro*, 252 F.3d 964 (8th Cir. 2001).  A challenge to the sufficiency of the evidence is reserved for trial – specifically a motion for acquittal under Federal Rule of Criminal Procedure 29 – not by a "dismissal of an indictment on the basis of

predictions as to what the trial evidence will be." *United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021).

Phenix claims defense counsel was ineffective for failing to file a motion to dismiss the Indictment arguing that his criminal history does not fall within the category of a violent felon that would trigger him to know it was unlawful for him to possess a firearm.  He relies on *Rehaif v. United States*, 588 U.S. 225 (2019) in support of his claim.  Phenix is mistaken as to what the Government must prove on a charge of felon in possession of a firearm in light of *Rehaif.*   The government is not required to prove that a defendant knew he was prohibited from possessing a firearm; it need only prove that a defendant knew that he belonged to the category of persons barred from possessing a firearm.  *Rehaif*, 139 S. Ct. at 2200.  In other words, "the government must prove that [the defendant] knew that he had been convicted of a crime *punishable* by imprisonment for a term exceeding one year at the time he possessed the firearms."  *United States v. Bull*, 8 F.4th 762, 770 (8th Cir. 2021) (cleaned up).

Here, the Indictment charged:

Defendant herein, knowing he had previously been convicted in a court of law of one or more crimes punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm that had traveled in interstate or foreign commerce during or prior to being in defendant's possession.

[Docs. 1, 2].  The language in the Indictment is legally sufficient on its face to charge Phenix with a violation of 18 U.S.C.  21§ 922(g)(1) under *Rehaif*.  There

was, therefore, no basis for the filing of a motion to dismiss the Indictment, and counsel cannot be ineffective for failing to file a meritless motion.

### B. Failure to File Motion to Suppress

Phenix claims defense counsel was ineffective for failing to file a motion to suppress with regard to the search of the vehicle.  In support of this claim, he offers two arguments: (1) the officers had a warrant for him, not to search the car; and (2) the motion would have been granted "as the government insist[ed] on not prosecuting [him] for [the] drugs and drum magazine found in [the] car."  [Doc. 6 at 37-38].  Phenix does not offer any facts in support of his arguments, nor does he dispute the facts in the record.

According to the undisputed facts, police were surveilling Phenix to arrest him on active warrants and to take custody of three missing and endangered children who were in the vehicle with him.  [Docs. 37 at 3, 46 at 4, 68 at 16].  Police waited for him to exit his vehicle so that he could be arrested without endangering the children.  [*Id.*].  When he exited the vehicle, the firearm was protruding from his right pant pocket and then he placed it in his armpit between his left arm and torso.  [*Id.*].  Phenix would not have prevailed on a motion to suppress because the charge of possessing a firearm was not based on a search of the vehicle.

31

To the extent Phenix suggests a motion to suppress should have been filed with regard to the drugs and drum magazine found in the car, that was not relevant to the § 922(g) charge. Setting that aside, the undisputed facts show that the drugs and drum magazine were discovered when officers removed the three missing and endangered children from the vehicle. [Doc. 46 at 5]. As such, a motion to suppress would have been meritless.

The Court finds that Phenix cannot establish either prong of the *Strickland* test: that his counsel's failure to file a motion to suppress was conduct that fell below the objective standard of reasonableness, or that he suffered prejudice as a result.

### *Motion to Amend 28 U.S.C. § 2255 Motion*

Phenix filed a motion to amend his § 2255 motion in which he claims that his conviction under 18 U.S.C. § 922(g)(1) violates his Second Amendment rights. [Petitioner's Motion to Amend, Doc. 24]. In support of his claim, he relies on *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). [*Id.*].

A motion to amend a § 2255 motion filed before a district court renders judgment is not barred as "second or successive." *U.S. v. Sellner*, 773 F.3d 927, 931 (8th Cir. 2014). However, motions brought under § 2255 are subject to a one-year limitations period. 28 U.S.C. § 2255(f)(1); *Peden v. United States*, 914 F.3d 1151, 1152 (8th Cir. 2019). Phenix's sentence became a final judgment in January

32

2022.  He did not file the motion to amend until December 2023, long after the one-year limitations period.  As a result, his motion is untimely under 28 U.S.C. § 2255(f)(1) unless the claim relates back to a timely filed motion as allowed by Federal Rule of Civil Procedure 15(c).  *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015).  Rule 15(c)(1)(B) provides that an "amendment to a pleading relates back to the date of the original pleading when: ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).

Phenix contends that § 922(g)(1) is unconstitutional and his conviction is therefore void based on the United States Supreme Court's decision in *Bruen*.  This new claim challenging the constitutionality of § 922(g)(1) would not be supported by a "common core of operative facts" as the ineffective assistance of counsel claims raised in his § 2255 motion.  *See United States v. Holdford*, No. 4:18-CR-00278 KGB, 2024 WL 4350792, at *9 (E.D. Ark. Sept. 30, 2024).  Therefore, his amended motion does not relate back to date of the initial filing.  *See id.*

The issue then becomes whether a new claim based on *Bruen* would be timely under § 2255(f)(3), which applies the one-year limitations period from the date the United States Supreme Court recognizes a new right and makes the right retroactive on collateral review.  28 U.S.C. § 2255(f)(3).  *Bruen* was decided on June 23, 2022.  *Bruen*, 597 U.S. at 1.  The filing of Phenix's motion to amend on

December 4, 2023 is more than one-year after the *Bruen* decision and, therefore, it is also untimely under § 2255(f)(3).

Even if the motion to amend was timely filed, following the decision in *Bruen*, the Eighth Circuit has concluded that the felon-in-possession statute is constitutional and that there is "no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024). As such, the Eighth Circuit's decision in *Jackson* forecloses the claim.[3] *See United States v. Lowry*, 112 F.4th 629, 632 (8th Cir. 2024); *Gundersen v. United States*, No. 24-1032, 2025 WL 251695, at *1 (8th Cir. Jan. 21, 2025).

## CONCLUSION

For the reasons stated, the allegations in the § 2255 motion do not meet the heavy burden to overcome Phenix's admissions during the plea hearing that he was satisfied with the way counsel handled his case, that counsel had investigated to his satisfaction, and that counsel had done everything he had asked him to do.

---

[3] Even if Phenix could bring an as-applied challenge to § 922(g)(1), his prior convictions clearly demonstrate a history of violence and that he is dangerous. *See United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024). His criminal history includes felony convictions for Resisting Arrest (3), Possession of a Controlled Substance (2), Domestic Assault 2nd Degree (2), Aggravated Stalking, Endangering the Welfare of a Child, and Tampering with a Motor Vehicle. [Doc. 46. at 7-26]. He also has misdemeanor convictions for Leaving Scene of an Accident, Engage Maintain Nuisance (6), Trespass 1st Degree (4), Domestic Assault 3rd Degree (3), Possession of a Controlled Substance, and numerous traffic violations. [*Id.*]. In total, his criminal history included 36 cases with several cases involving more than one charge. [*Id.*].

Phenix has not demonstrated any errors by defense counsel that fall outside the wide range of reasonable professional assistance. Nor has he established any prejudice that he suffered as a result of any alleged deficiencies in counsel's performance. As a result, his claims of ineffective assistance of counsel fail both prongs of the *Strickland* test. And, because his allegations are conclusively refuted by the record, inherently incredible, and based on speculation, Phenix is not entitled to a hearing on the motion

## CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *Id*. § 2253(c)(1)(B). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Miller-El*, 537 U.S. at 335-36.

Courts reject constitutional claims either on the merits or on procedural grounds. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having thoroughly reviewed the record in this case, the Court finds that Phenix has failed to make a "substantial showing" of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Therefore, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, [Docs. 1, 6], is **DENIED** without a hearing.

**IT IS FURTHER ORDERED** that the Motion to Amend 28 U.S.C. § 2255 Motion, [Doc. 24], is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in the § 2255 motion because

36

Phenix has not made a substantial showing of the denial of a constitutional right.

*See* 28 U.S.C. § 2253(c)(2).

Dated this 14th day of March, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE